# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*Jones v. Board of Education of the City of Chicago*, 2013 IL App (1st) 122437

| | |
|---|---|
| Appellate Court Caption | CHARLOTTE JONES, Petitioner, v. THE BOARD OF EDUCATION OF THE CITY OF CHICAGO, DAVID VITALE, President, JESSE RUIZ, HENRY BIENEN, MAHILIA HINES, PENNY PRITZKER, ROD SIERRA, ANDREA ZOPP, Board Members; JEAN-CLAUDE BRIZARD, Chief Executive Officer; ANNE WEILAND, Hearing Officer, and THE ILLINOIS STATE BOARD OF EDUCATION, Respondents. |
| District & No. | First District, Second Division<br>Docket No. 1-12-2437 |
| Opinion filed<br>Rehearing denied<br>Modified opinion filed | July 30, 2013<br>August 30, 2013<br>September 3, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Petitioner was properly terminated from her position as a school teacher in Chicago on the ground that she repeatedly provided her parents' Chicago address rather then her suburban address in registering her children in the selective-enrollment Chicago school where she taught and later in a selective-enrollment Chicago high school, regardless of her incredible claim that she thought her children were entitled to the same waiver of the requirement that she received as a pre-1996 employee of the Board of Education of the City of Chicago and that she used her parents' address when she enrolled her children online because their suburban address was not accepted. |
| Decision Under Review | Petition for review of Board Resolution No. 12-0725-RS3 of the Board of Education of the City of Chicago. |

| | |
|---|---|
| Judgment | Affirmed. |
| Counsel on Appeal | Poltrock & Giampietro, of Chicago (Kurtis Hale, of counsel), for petitioner. |
| | Law Department of Board of Education of the City of Chicago, of Chicago (James L. Bebley and Lee Ann Lowder, of counsel), for respondents. |
| Panel | PRESIDING JUSTICE QUINN delivered the judgment of the court, with opinion. |
| | Justices Connors and Simon concurred in the judgment and opinion. |

## OPINION

¶ 1                                    I. INTRODUCTION

¶ 2    Petitioner, Charlotte Jones, a tenured teacher was terminated from her position by the Board of Education of the City of Chicago (Board) for repeatedly providing a false Chicago address for her two children rather than their suburban resident address so she could enroll them at the selective-enrollment Chicago elementary school where she taught. She continued her daughter's Chicago education at Morgan Park high school, a selective-enrollment Chicago high school, in the same fraudulent manner. This is a direct appeal to the appellate court for judicial review of the final administrative agency decision of the Board entered on July 25, 2012, which disposed of all claims surrounding the petitioner's termination in favor of the Board.

¶ 3                                    II. JURISDICTION

¶ 4    Neither party cited authority for petitioner's direct appeal to the appellate court from the Board's final administrative decision. Jurisdiction is conferred on this court pursuant to section 34-85(8) of the Illinois School Code (105 ILCS 5/34-85(8) (West 2012)), which states that "[t]he teacher may seek judicial review of the board's decision in accordance with the Administrative Review Law, *** except that the review must be initiated in the Illinois Appellate Court for the First District." The Administrative Review Law provides that "[u]nless another time is provided specifically by law authorizing the review, an action for direct review of a final administrative decision of an administrative agency by the appellate court shall be commenced by the filing of a petition for review in the appellate court within 35 days from the date that a copy of the decision sought to be reviewed was served upon the party affected by the decision." 735 ILCS 5/3-113(a) (West 2012). The Board's final decision

is dated July 25, 2012. Petitioner's petition for appellate review, filed on August 23, 2012, is timely.

¶ 5                                III. STANDARD OF REVIEW

¶ 6       Our supreme court has carefully constructed guidance for judicial review of administrative decisions, such as the Board's order of termination in this case, and stated as follows:

>        "Judicial review of administrative decisions is subject to important constraints regarding the issues and evidence that may be considered. *** In addition, '[t]he findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct' and '[n]o new or additional evidence in support of or in opposition to any finding, order, determination or decision by the administrative agency shall be heard by the court.' 735 ILCS 5/3-110 (West 2002). Consistent with these statutory mandates, we have held that 'it is not a court's function on administrative review to reweigh evidence or to make an independent determination of the facts.' [Citation.] When an administrative agency's factual findings are contested, the court will only ascertain whether such findings of fact are against the manifest weight of the evidence. [Citation.]
>
>        The standard of review is different when the only point in dispute is an agency's conclusion on a point of law. There, the decision of the agency is subject to *de novo* review by the courts. Yet a third standard governs when the dispute concerns the legal effect of a given set of facts, *i.e.*, where the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard. In such cases, which we have characterized as involving a mixed question of law and fact, an agency's decision is reviewed for clear error." *Provena Covenant Medical Center v. Department of Revenue*, 236 Ill. 2d 368, 386-87 (2010).

¶ 7       These are the standards we implement in reviewing the Board's final administrative decision.


¶ 8                                    IV. BACKGROUND

¶ 9       Petitioner, Charlotte Jones, was terminated from her employment as a Chicago teacher for enrolling her two children in the selective-enrollment school where she taught and continuing her daughter's Chicago high school education in another selective-enrollment school by repeatedly providing a false Chicago address on all school record documents to do so.

¶ 10      Petitioner has been employed by the Board as a Chicago school teacher since 1983. She holds a bachelor's degree in modern languages from Knox College and has two master's degrees–one in curriculum and instruction and another one in educational leadership. In 1980, the Board adopted a policy requiring its employees to live in Chicago. Petitioner, in violation of that policy, resided in South Holland, Illinois, and outside of Chicago exclusively since purchasing a home in South Holland in 1994 and residing there. Two years

after petitioner moved to South Holland, the Board adopted a new policy which exempted employees hired before August 26, 1996, from the Chicago residency requirement. Petitioner, hired in 1983, benefitted from this new policy as she could continue to work in the Chicago public school system without either moving back to Chicago or losing her job.

¶ 11 In June 2009, the Board's office of inspector general received a complaint that petitioner's two children were enrolled in the Chicago public school system even though they were not Chicago residents. The investigation confirmed that petitioner's children resided in South Holland, outside the Chicago school district during the entire time they were enrolled in the Chicago schools. The investigation also confirmed that petitioner used her parents' Chicago address to enroll her children in Chicago's school system from the first date of enrollment in 1999 and throughout their entire attendance until her daughter graduated from Chicago's Morgan Park high school in 2011. Petitioner was interviewed by the investigator and stated that because she had received a grandfather exemption regarding the Chicago residency requirement for Board employees hired before 1996, she thought her children, after being born, received a similar grandfather status as she had and were able to reside outside of Chicago but could, nonetheless, attend Chicago public schools free of charge, even special-enrollment Chicago public schools. Petitioner never confirmed her unilateral belief with any officials and submitted her parents' Chicago residence address rather than provide the school with the children's South Holland home address on all enrollment documents and other forms that are a part of the record.

¶ 12 The Chicago school that petitioner chose to initially enroll her two children as students was McDade Classical elementary school (McDade) where she worked as a teacher. McDade is one of only five selective-enrollment elementary schools for gifted children in Chicago with an admissions process that begins in the year before admission and where all applicants are tested. Students are admitted on the basis of their test performance. There are between 500 to 600 applications received and 28 students or less are admitted. In other words, only approximately 5% of the applicants can expect to be admitted. There were no issues raised regarding this system of admission being rigged or overridden to favor both of petitioner's children, who were admitted in separate years to the school where she worked. Petitioner continued to fraudulently enroll her nonresident daughter in Morgan Park high school, another selective-enrollment Chicago public school, for the remainder of her education.

¶ 13 Following the investigation, on September 29, 2011, the chief executive officer of the Board approved charges and factual specifications against petitioner and informed her of the charges and facts in support, as well as notification that he sought termination of her employment as the appropriate remedy. In total, petitioner was charged with 13 separate violations of the Chicago public schools' "Employee Discipline and Due Process Policy" and Chicago Board of Education Rules, as well as statutory violations of the Illinois School Code and conduct unbecoming an employee of the Chicago public schools. The notice also enumerated the facts that supported the charges, including that petitioner provided false residency information for her two children claiming they resided in Chicago when, in fact, they were South Holland residents, in order to obtain a tuition-free education for them. The notice also charged that petitioner's actions took selective-enrollment student eligibility slots from Chicago resident children who otherwise could have attended these selective schools.

¶ 14    A hearing was held on March 14, 2012, before a hearing examiner on the charges lodged against petitioner. Three witnesses testified at the hearing: (1) McDade school principal, Rufus L. Coleman; (2) the investigator for the Board's office of inspector general, Harold Floyd; and (3) the petitioner, Charlotte Jones. Both the Board and petitioner were represented by counsel.

¶ 15    On May 25, 2012, the hearing examiner issued her findings of facts and recommendations. The hearing examiner found that petitioner repeatedly submitted false documents and applications showing that her children were Chicago residents. She also specifically held that petitioner's children were not Chicago residents when they received tuition-free education in Chicago and that it was petitioner's conduct that led to her children unlawfully receiving a tuition-free education in Chicago over a 12-year period. The hearing examiner concluded that, had petitioner's children not been enrolled at McDade, other legitimate Chicago resident students would have been offered the opportunity to enroll in this highly selective and desirable school. Although the hearing examiner found that petitioner had provided false residency information for her two children on multiple emergency contact forms and the registration cards, and provided a Chicago address as their residence to be entered into the computer database, the hearing examiner held that petitioner did not violate student residency and nonresidency rules and that "[p]roviding an incorrect address under the mistaken belief that her children were entitled to a waiver of residency" is not irremediable action warranting dismissal. She credited the petitioner's testimony that petitioner believed her children were entitled to a similar waiver of residency requirement as she was given as a pre-1996 Board employee.

¶ 16    Petitioner stated she provided a Chicago address for her children for the online enrollment because the computer program would not accept a suburban address. The handprinted registration cards and emergency contact forms petitioner filled out that were not entered into a computer stated: "Providing false information, incorrect student address, on these forms does constitute a violation of Section 4-17" of the Board's employee discipline code. Petitioner filled in a Chicago address when using these forms, as well. In spite of this, the hearing examiner found that "[n]o evidence was produced to demonstrate that [petitioner] was informed of the residency requirements." Further, the hearing examiner found no evidence that petitioner knew or should have known that her South Holland children were not eligible to attend Chicago public schools free of charge. The hearing examiner concluded that petitioner's conduct did not constitute cause for discharge and recommended to the Board that all disciplinary action against petitioner be withdrawn.

¶ 17    After the parties were given an opportunity to submit posthearing briefs and argument to the Board in support of and in opposition to the hearing examiner's recommendations, the Board reviewed the entire file received from the hearing examiner which included the transcript of the hearing and exhibits.

¶ 18    On July 25, 2012, the Board issued its opinion and order in this teacher dismissal proceeding. The Board accepted the hearing examiner's findings that: (1) petitioner repeatedly submitted false documents and applications showing, falsely, that petitioner's children were Chicago residents; (2) petitioner's children were not Chicago residents when they received tuition-free education while enrolled in Chicago's school district and (3)

petitioner's fraudulent conduct led to her children unlawfully receiving tuition-free education over a 12-year period. The Board rejected the hearing examiner's conclusion that in order to establish a violation of state law which stated that "a person who knowingly enrolls or attempts to enroll in the schools of a school district on a tuition free basis a pupil known by that person to be a nonresident of the district shall be guilty of a Class C misdemeanor" (105 ILCS 5/10-20.12b(e) (West 2012)), the Board should provide actual notice to petitioner of these residency rules before the act of enrolling a nonresident student could form the basis of any dismissal charges. Instead, the Board held it was not required to provide individual, actual notice to anyone of this state law and petitioner was required to comport her conduct with state law.

¶ 19    The Board further determined that petitioner's actions constituted immoral conduct that is irremediable *per se* when she did not disclose her children's true address and thereby took selective-enrollment seats away from qualified Chicago school children. It also found the hearing examiner's conclusion that petitioner's fraudulent actions in obtaining 12 years worth of free education for her children "had no impact on the orderly education process" directly contradicted the examiner's finding that if petitioner's children had not been fraudulently enrolled, "other students would have been offered the opportunity to enroll in those available seats." Instead, the Board held that petitioner's actions constituted violations of its policies and rules in that her actions disrupted the orderly educational process and was irremediable because it caused damage to the functioning of the school. Contrary to the hearing examiner's conclusion regarding petitioner's conduct, the Board also concluded that "the proven fact that [petitioner] submitted a false address for her children numerous times over 12 years in order to obtain free tuition constitutes archetypal conduct that is unbecoming a [Chicago public school] employee." In conclusion, the Board found sufficient cause existed to dismiss petitioner from her employment.

¶ 20                                    V. ANALYSIS

¶ 21    Turning to the legal merits of this case, we begin by noting that there is no factual dispute whatsoever concerning the petitioner's children's status as nonresidents of the Chicago school district who are ineligible to receive tuition-free education in Chicago and that petitioner fraudulently submitted school documents that provided a Chicago address where the children did not live. Under the manifest weight of the evidence standard, we will disturb such factual determinations only if an opposite conclusion is clearly apparent. *Sangamon County Sheriff's Department v. Illinois Human Rights Comm'n*, 233 Ill. 2d 125, 142-43 (2009).

¶ 22    Petitioner's defense to the Board's action is that she believed her conduct in creating fraudulent residency statements on enrollment forms and other documents when enrolling her children in a Chicago school district was that she had no idea that her actions were in violation of the law that required students, and especially selective-enrollment students, to

-6-

reside within the district.[1] This gets petitioner nowhere as it has long been the law that everyone is presumed to know the law and ignorance of the law excuses no one. *People v. Donahoe*, 223 Ill. App. 277 (1921); *People v. Lander*, 215 Ill. 2d 577, 588-89 (2005) ("It is well settled that all citizens are charged with knowledge of the law."); *People v. Evans*, 2013 113471, ¶ 13 ("all citizens are charged with knowledge of the law"); *People v. Sevilla*, 132 Ill. 2d 113, 127 (1989) ("ignorance of the law does not excuse unlawful conduct").

¶ 23        Furthermore, the statute relied upon by petitioner in stating she was ignorant of the law that states a student must be a resident of the district he or she is enrolled in, states, in pertinent part:

> "Ignorance or Mistake. (a) A person's ignorance or mistake as to a matter of either fact or law *** is a defense if it negatives the existence of the mental state which the statute prescribes with respect to an element of the offense.
>
>     (b) A person's reasonable belief that his conduct does not constitute an offense is a defense if:
>
>         (1) The offense is defined by an administrative regulation or order which is not known to him and has not been published or otherwise made reasonably available to him, and he could not have acquired such knowledge by the exercise of due diligence pursuant to facts known to him[.]" 720 ILCS 5/4-8 (a), (b)(1) (West 2012).

Assuming the above-quoted subsection 4-8 of the Criminal Code of 1961 (720 ILCS 5/4-8 (a), (b)(1) (West 2012)) has some applicability to the instant civil case, petitioner would still have to show that the residency rule was not known to her, and it was not published and she could not have found it by the exercise of due diligence.

¶ 24        It has long been the law in Illinois that a school district provides a free education only to children who reside within its district and Illinois courts have been enforcing this law for almost a century. *Ashley v. Board of Education*, 275 Ill. 274 (1916); *Kraut v. Rachford*, 51 Ill. App. 3d 206, 212 (1977). As explained in footnote 1, *supra*, the Board's residency rule is found in chapter V, section 5-12 of the Board's rules. Additionally, courts take a dim view of educated professionals who attempt to excuse their illegal conduct by claiming ignorance of the law. *People ex rel. Ballinger v. O'Connor*, 13 Ill. App. 2d 317, 331 (1957) (court found it inconceivable that a probationary policeman who was a college graduate with one year of law school did not know the rules governing suspension and discharge from the police department); *Singh v. Department of Professional Regulation*, 252 Ill. App. 3d 859 (1993) (pharmacist's claim of ignorance of reporting requirements when dispensing

---

[1]Tuition-paying nonresidents who choose to pay tuition in advance and enroll in the Chicago school district are barred from submitting applications to enroll in a selective-enrollment school. Enrollment in selective-enrollment schools, like McDade and Morgan Park high school, are reserved exclusively for Chicago residents. See Chicago Board of Education Rules, ch. V, § 5-12. ("Pupils must reside within the limits of the City of Chicago to attend a Chicago Public School. For purposes of enrolling or completing enrollment in an Options for Knowledge school or program, a student must establish Chicago residency on or before July 1st prior to the start of the upcoming school year.").

controlled substances was ineffective in preventing the suspension of his license). Petitioner is a tenured teacher with two master's degrees who was employed for over 25 years at McDade. It is inconceivable that she was ignorant of the Chicago residency requirements for McDade, especially given the fierce, yearly competition among Chicago residents to gain admission to McDade, despite the odds.

¶ 25 One only needs to have a cursory knowledge of residential privileges to understand that non-resident students, no matter who their parents may be, have no right or entitlement to a free public school education in a district where they do not live. All school districts, especially one like Chicago where current news events contain almost daily reports of their limited funds, have a strong interest in ensuring that they do not provide free public education to students whose families do not reside within its district. A statement by a parent of the residency of their children in order to fraudulently enroll them affects many issues that have high costs associated with them besides the physical building's maintenance and teachers' salaries and benefits. It affects, among other things, rights to other school privileges such as school meals and transportation, and also affects enforcement of attendance requirements and determinations of liability for unforseen events.

¶ 26 Based on the facts of this case as presented at the hearing, both the hearing examiner and the Board found that petitioner violated section 4-17 of the Chicago public schools' Employee Discipline and Due Process Policy, which prohibits forging or falsifying official school or Board documents, and violated section 5-1 of the same policy, which prohibits repeated or flagrant acts of section 4 misconduct. Under the deferential review standard, the Board's final decision must be affirmed unless it is clearly erroneous.

¶ 27 The Board has the power to both establish and enforce standards that protect the Chicago public education district. The termination of a teacher is not clearly erroneous if the termination is based on the teacher's failure to comply with the conditions, laws, policies and/or other requirements imposed for the protection of the public education district. *Ahmad v. Board of Education of the City of Chicago*, 365 Ill. App. 3d 155 (2006). The petitioner's termination is rationally related to the legitimate public interest the Board is charged with protecting. Through this termination, the Board seeks to protect and deter the fraudulent diminishment of public funds that should be used to teach Chicago school children. The Board's determination that petitioner should be terminated for her conduct in fraudulently enrolling her nonresident children in the Chicago public school district to receive tuition-free education was irremediable *per se* because it was immoral. This determination is in no way clearly erroneous. Put another way, this is not the type of decision that has no rational basis in the facts of petitioner's case. In fact, had petitioner disclosed her children's suburban residency and been willing to pay nonresident tuition, she still would not have been able to enroll her children in any of Chicago's selective-enrollment schools, which are reserved for Chicago residents exclusively.

¶ 28 Petitioner submits that there is no case directly on point dealing with the factual issue of whether a teacher can be terminated for fraudulently enrolling her nonresident children repeatedly for 12 years in the Chicago school system to receive tuition-free education. Petitioner argues that such conduct cannot be deemed by the Board to be irremediable *per se* as the facts do not fit the legal requirements established by the supreme court in *Gilliland*

*v. Board of Education of Pleasant View Consolidated School District No. 622*, 67 Ill. 2d 143 (1977). First, we note that since the supreme court's 1977 *Gilliland* decision, the school code was amended in 1995, as follows: " 'No written warning shall be required for conduct on the part of a teacher or principal which is *** immoral *** as that conduct is deemed to be irremediable.' " *Younge v. Board of Education of the City of Chicago*, 338 Ill. App. 3d 522, 533 (2003) (quoting 105 ILCS 5/34-85 (West 1996)). The *Younge* case acknowledged that "[i]t is well settled that the determination of whether a cause for dismissal is remediable or irremediable is a question of fact that involves the exercise of judgment and, therefore, lies within the discretion of the fact finder." *Younge v. Board of Education of the City of Chicago*, 338 Ill. App. 3d 522, 531 (2003). The Board's factual findings on irremediability will not be reversed unless it is against the manifest weight of the evidence. *Id.* Additionally, misrepresenting one's status to redirect assets away from the Board's mission has been determined to constitute immoral conduct that is irremediable *per se. Ahmad v. Board of Education of the City of Chicago*, 365 Ill. App. 3d 155 (2006) (tenured teacher's termination for misappropriating items from a nonprofit organization for her personal benefit deemed immoral by the Board was affirmed). Additionally, the Illinois School Code provides that conduct which is immoral or criminal is deemed to be irremediable *per se*. 105 ILCS 5/34-85(a) (West 2012). Therefore, in cases involving such misconduct, "it is unnecessary to employ the *Gilliland* test *** because the statute now makes this conduct irremediable *per se.* Not only is no warning required for this type of conduct, but it is also unnecessary for the Board to show that this type of conduct caused damage." *Younge v. Board of Education of the City of Chicago*, 338 Ill. App. 3d 522, 534 (2003).

¶ 29     In a separate proceeding before the Board, petitioner and her husband did not contest the Board's position that they were indebted to the Board in the amount of $125,226.79 for their children's nonresident tuition for 12 years. The Board's decision on this matter became final on June 27, 2012. *In re* Jones, The Board of Education of the City of Chicago, Notice of Final Determination of Non-Residency, No. 12-0627-EX19, June 27, 2012. This is the monetary damage created by petitioner's fraudulent actions. *All Purpose Nursing Service v. Human Rights Comm'n*, 205 Ill. App. 3d 816, 823-24 (1990) (judicial notice may be taken of administrative decisions in related administrative proceedings involving the parties). No one has quantified the damage created by not educating Chicago resident students rather than petitioner's nonresident children in McDade or Morgan Park high school, two selective-enrollment schools. Even though the Board was not required to employ the *Gilliland* test and prove that petitioner's fraudulent actions caused damage (*Younge v. Board of Education of the City of Chicago*, 338 Ill. App. 3d 522, 534 (2003)), we take judicial notice of the significant monetary damage that was caused to the Chicago public school system by her actions.

¶ 30     The administrative record contains strong evidence, some of which is uncontested, that supports the affirmance of the agency's decision. The Board considered the hearing examiner's conclusion that petitioner had a mistaken belief that her children were imbued with a similar grandfather status because of the waiver of residency status that was statutorily given to her in 1996 and she believed she could enroll her nonresident children free of charge in Chicago. The Board's rejection of the hearing examiner's conclusion is reasonable as the

Board found it was inconceivable that a tenured teacher employed since 1983 could have been ignorant of student residency requirements in Illinois. More importantly, had petitioner honestly believed her children were covered by a residency waiver linked to her own employee waiver, she would not have repeatedly written a false Chicago address on the children's emergency contact forms and other printed enrollment forms as there would have been no reason to falsify these documents, especially in light of their purpose to be relied on in the event of an actual emergency.

¶ 31    Any evidence that petitioner performed her teaching work adequately does nothing to assist her in this case. This is not a termination based on petitioner's failure to meet her performance expectations while teaching her students. The reasons for petitioner's termination were listed in the letter of charges with specific supporting facts. Clearly, those charges did not arise out of her performance of her teaching assignments. The petitioner's performance in the classroom had nothing to do with the Board's final decision to approve her termination. Such evidence was irrelevant to the charges against petitioner.

¶ 32                                    VI. CONCLUSION

¶ 33    For the reasons stated above, this court affirms the final decision of the Board of Education of the City of Chicago dated July 25, 2012, which terminated petitioner's employment.

¶ 34    Affirmed.