# Illinois Official Reports

## Appellate Court

<div style="border">

### *Crowley v. Board of Education of the City of Chicago*,
### 2014 IL App (1st) 130727

</div>

| | |
|---|---|
| Appellate Court Caption | JENIFER CROWLEY, Plaintiff-Appellant, v. THE BOARD OF EDUCATION OF THE CITY OF CHICAGO; DAVID VITALE, President; JESSE RUIZ, Member; HENRY BIENEN, Member; MAHILIA HINES, Member; DEBORAH H. QUAZZO, Member; CARLOS ASCOITIA, Member; ANDREA ZOPP, Member; BARBARA BYRD-BENNETT, Chief Executive Officer, and the ILLINOIS STATE BOARD OF EDUCATION, Defendants-Appellees.–DARLYN PRUITT, Plaintiff-Appellant, v. THE BOARD OF EDUCATION OF THE CITY OF CHICAGO; DAVID VITALE, President; JESSE RUIZ, Member; HENRY BIENEN, Member; MAHILIA HINES, Member; DEBORAH H. QUAZZO, Member; CARLOS ASCOITIA, Member; ANDREA ZOPP, Member; BARBARA BYRD-BENNETT, Chief Executive Officer, and the ILLINOIS STATE BOARD OF EDUCATION, Defendants-Appellees. |
| District & No. | First District, First Division<br>Docket Nos. 1-13-0727, 1-13-1121 cons. |
| Filed | March 31, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Two Chicago school teachers were properly terminated for failing to abide by the school board's residency requirement, notwithstanding their contention that the residency requirement had become "stale" and unenforceable due to the lack of vigorous and equal enforcement, since employers may change from a lax enforcement policy to a stricter policy when the change is made clear to the employees, as in the instant case where the board's announcement of second warning resolutions negated any basis for relying on the past nonenforcement policy, and under those circumstances, the termination proceedings were not stale. |

| | |
|---|---|
| Decision Under Review | Appeal from the Circuit Court of Cook County, Nos. 12-CH-10424, 12-CH-29314; the Hon. Mary Lane Mikva and the Hon. Diane J. Larsen, Judges, presiding. |
| Judgment | No. 1-13-0727, Affirmed. <br> No. 1-13-1121, Affirmed. |
| Counsel on Appeal | Poltrock & Giampietro, of Chicago (Kurtis Hale, of counsel), for appellants. <br><br> Law Department of the Board of Education of the City of Chicago, of Chicago (James L. Bebley and Lee Ann Lowder, of counsel), for appellees. |
| Panel | JUSTICE DELORT delivered the judgment of the court, with opinion. Justices Hoffman and Cunningham concurred in the judgment and opinion. |

**OPINION**

¶ 1       Residency requirements for public employees generate considerable litigation, usually involving highly fact-based disputes over whether an employee is a *bona fide* resident of the jurisdiction in question. These consolidated cases present an unusual spin on that pattern. The employees in question, teachers for the Chicago Board of Education (Board),[1] admit that they live outside of Chicago–in fact, outside of Cook County. Their main contentions here are that the Board's residency requirement became "stale" and unenforceable because the Board failed to vigorously enforce it until recently, and the Board enforced the policy unequally. We agree with the circuit court judges who found otherwise and declared that the Board correctly terminated the teachers' employment. We therefore affirm the judgments below.

---

[1]Pursuant to section 2-1008(d) of the Illinois Code of Civil Procedure (735 ILCS 5/2-1008(d) (West 2010)) we have amended the caption to correctly reflect the current chief executive officer and members of the Chicago Board of Education. On our own motion, we hereby substitute them as parties as shown above.

## BACKGROUND

### Facts Common to Both Cases

¶ 4 The Board's standing policy regarding employee residency states:

> "All employees hired on or about November 20, 1996, will be required to be actual residents of the City of Chicago within six months from the day their employment begins, except where the employee has been granted a waiver in accordance with the provision of this Policy."

The policy also provides that a teacher who violates the residency rule can be discharged if she fails to establish Chicago residency after receiving a warning resolution from the Board.

¶ 5 Waivers are governed by a different Board policy, which states, in part:

> "The Board may grant special needs waivers ('special needs waivers') of the residency requirement for new employees hired to positions designated by the Board as special needs positions. Special needs waivers provided for under this section may only be *granted at the time of the employee's hire* and shall not be granted to existing employees except where the existing employee has been previously and continuously eligible for a waiver since the Board adopted the waiver policy on August 22, 2001." (Emphasis added.)

See generally *Jones v. Board of Education of the City of Chicago*, 2013 IL App (1st) 122437 (discussing these policy provisions in the context of a teacher dismissal). Another policy provision states: "New employees must *apply for* a special needs waiver at the time of hire ***." (Emphasis added.)

¶ 6 The Board gives teachers who violate the residency policy a warning resolution directing them to comply, and if they do not do so within 60 days, the Board can seek to dismiss them. The Board has adopted an "Employee Disclipline and Due Process Policy" (EDDPP) stating that the Board "will have waived its right" to discipline an employee if it: "does not take disciplinary action against [the] employee within a reasonable time after it knew or should have known of an alleged rule infraction." The policy defines "unreasonable delay"[2] as "a period of time that renders it difficult or impossible to ascertain the truth of the matters in controversy or as to create a presumption that the conduct at issue was condoned by the Board." The policy states that "[t]he date a final investigative report is served on the Board is the date the Board is presumed to have knowledge of the rule infraction." It also provides that a "principal's *** or department head's failure to monitor compliance with this policy shall not relieve employees of their obligation to comply with the policy."

¶ 7 In 2009, the Board began auditing its employee records for compliance with the residency requirement. The audit showed that the plaintiffs in these consolidated cases, Jenifer Crowley and Darlyn Pruitt, lived in Whiting, Indiana, and Bolingbrook, Illinois, respectively.

¶ 8 Both plaintiffs obtained formal administrative hearings before Illinois State Board of Education (ISBE) hearing officers regarding their proposed termination. Each admitted her nonresidency and neither challenged her termination on factual grounds. Their defenses

---

[2]The "reasonable time" and "unreasonable delay" clauses are set forth in two sentences that directly follow each other in a single paragraph in the board policies. We deem them to be parallel terms even though they are phrased somewhat differently.

rested, in large part, on evidence regarding the Board's nonenforcement of the residency requirement as to two other particular Board employees. Both plaintiffs offered this evidence to support their argument that such favoritism rendered it unfair to enforce the policy against them.

¶ 9    The first such employee was Timothy Cawley, who was hired to be the Board's acting chief administrative officer (CAO) on May 17, 2011, when he was not living in Chicago. The CAO position was not designated as a "special needs" position until the Board reclassified it on June 22, 2011, retroactively granted a one-year residency waiver to Cawley, and appointed him as permanent (*i.e.*, not merely "acting") CAO. This action came within the 60-day "grace period" following Cawley's hire as acting CAO.

¶ 10    The second, Daniel Coyne, was a social worker for the Board and lived in Evanston during his employment for the Board. Although he received a warning resolution in May 2010 informing him of his possible violation of the residency policy, he was told there was a "due process mistake" regarding his residency notification and that the Board would be asked to grant him a waiver. Apparently, the Board first waived the residency requirement for all school social workers, but then reinstated it. The Board issued warning resolutions to the nonresident social workers such as Coyne, but later rescinded the resolutions after determining that they might be defective on due process grounds because the Board had failed to provide proper notification of the residency policy reinstatement to the social workers.

¶ 11    Thomas Krieger, a licensed attorney and the Board personnel administrator, testified in both hearings, providing the same basic testimony in each. He stated that Board records were historically kept in many different places and not reconciled with each other, resulting in discrepancies such as listing as many as eight different addresses for some employees. This information was so unreliable that it could not be used to initiate disciplinary proceedings. The Board implemented personnel records software, PeopleSoft, to modernize its operations and reconcile employee files, but its implementation was so fraught with errors that some employees were actually missing paychecks. It took until 2009 to resolve the issues regarding the software, and the Board then reprioritized its use to identify the employees who apparently lived outside of Chicago, had not obtained a waiver, and were not grandfathered under the residency policy. This process resulted in the identification of 900 employees, most of whom resolved their residency issues by providing updated information, and some of whom obtained waivers. In the end, the Board adopted warning resolutions as to 77 nonresident tenured teachers, including Crowley and Pruitt. Krieger explained that a primary impetus for the Board's enforcement of the residency policy was a budget crisis which precipitated the need for layoffs. The Board ramped up residency enforcement so that teachers living in the suburbs, rather than teachers who obeyed the Board policy, would be laid off first.

¶ 12                     No. 1-13-0727–Jenifer Crowley

¶ 13    Plaintiff Jenifer Crowley was a tenured teacher who began working for the Board in 1998. During the entire time she worked for the Board, she lived in Whiting, Indiana, and actually listed the Indiana address on official board documents. The Board sent six letters to Crowley in 1998 and 1999 notifying her that the six-month grace period would soon expire and that she must move to Chicago or face discharge.

¶ 14    In December 2004, Crowley received a warning resolution from the Board regarding her Indiana residency based in part on the 1998 and 1999 warning letters, and telling her she had 60 days to move into the city or face termination. Crowley met with the Board's inspector general regarding her residency in 2004, but the Board did not contact Crowley regarding her residency for the next six years until it reviewed the results of the residency audit. The Board eventually notified her of the residency violation by communications in January and February, 2010 and, after she failed to comply, adopted a second warning resolution later that year.

¶ 15    At Crowley's ISBE hearing, Carver Elementary School principal Linda Randolph testified that she was required to maintain some racial balance when hiring teachers, and that because there were no available white teachers who lived in Chicago, she hired white candidates who lived in suburban areas and Indiana. Over the course of Crowley's employment, Crowley asked Randolph about her Indiana residency, and Randolph wrote letters of appeal "to whoever was in power at that time." Randolph could not identify to whom she sent the letters, and she received no responses. Crowley admitted that Randolph never told her "not to comply with the policy."

¶ 16    Although Crowley pressed the issue of Coyne's and Cawley's residency, hearing officer Vicky Peterson-Cohen found it was not relevant. She did, however, rule in favor of Crowley on the basis that the Board had condoned Crowley's failure to live in Chicago by waiting too long to enforce its policy. She determined that the Board's termination of Crowley was "stale" under the EDDPP. In sum, she recommended that the Board rehire Crowley and make her whole for lost wages and benefits.

¶ 17    The Board rejected Peterson-Cohen's recommendations. On February 22, 2012, the Board issued a detailed opinion acknowledging that staleness may bar termination proceedings. However, it found that the case was not "stale" in the sense that too much time had passed to locate missing witnesses or lost documents. No missing documents or witnesses were needed to shed light on whether Crowley lived outside Chicago–Crowley admitted as much. In fact, the Board noted that the evidence was "fresh and availing."

¶ 18    The Board determined that Crowley's staleness defense rested solely on whether a reasonable person in her position, exercising ordinary diligence, would be entitled to assume the Board had condoned her Indiana residency. The Board noted there was no evidence that anyone from the Board affirmatively assured Crowley that her conduct was condoned. The Board also stated that although prior enforcement of the residency policy might have been lax, labor law principles entitled it to strictly enforce it after giving clear notice of intent to do so through the second 2010 warning resolution.

¶ 19    Crowley filed a complaint for administrative review in the circuit court. The court affirmed the Board's order and upheld Crowley's termination. This appeal followed.

¶ 20                        No. 1-13-1121–Darlyn Pruitt

¶ 21    When the Board hired Pruitt in 2001, she lived in Chicago. However, she moved to Bolingbrook in 2004 despite having acknowledged receipt of the Chicago residency policy by initialing it at the time of her hire. She worked at Lewis Elementary School and was never eligible for a special needs waiver. In January 2010, she communicated with a Board supervisor in connection with an investigation into her residency. On May 31, 2010, the

Board issued her a warning resolution directing her to move into the city within 60 days or be dismissed. During this time, she explored various options for Chicago housing, but rejected them all as being too expensive or inconvenient.

¶ 22    At the ISBE hearing, evidence was admitted regarding Cawley and Coyne similar to that presented in Crowley's hearing. Krieger also testified regarding the history of the Board's implementation of the residency policy. Hearing officer Jeanne Charles Wood found there was insufficient cause to dismiss Pruitt because the Board applied the residency policy in an "arbitrary and capricious" manner. In so holding, she focused solely on the different treatment the Board had afforded CAO Cawley. She did not address the lower-level employee, Coyne, whom Pruitt had similarly proffered as an example of unequal enforcement, other than to note that due process implications had complicated the viability of his discharge proceedings. Wood found that Cawley's retroactive special needs exemption was invalid because the Board could only grant such exemptions at the time of hire and could only grant waivers before an employee was hired. She also did not find that his initial designation merely as "acting" CAO made any difference. In sum, she essentially found that since the Board had not enforced its residency policy with punctilious exactness against every single employee, it could never apply it to any other employee.

¶ 23    The Board rejected Wood's recommendations. On June 27, 2012, the Board issued a detailed opinion, similar to that in the Crowley case, finding that it had sent "many written notices" to Pruitt notifying her that she must move back into Chicago. The Board adopted Wood's finding of fact that Pruitt lived in Bolingbrook but rejected her interpretation of the Cawley hiring, stating specifically that it granted Cawley a special needs waiver at the same time it appointed him as permanent CAO. The Board also noted that, when reviewing the special needs policy in context, it is "clear that new employees may apply for special needs waivers during the period of time when they are beginning their employment." The Board also found that because the residency policy itself specified that an employee could apply for a special needs waiver "at the time of hire," the policy could not be interpreted as requiring employees to actually obtain the waiver before they were hired–which was the underlying premise of Wood's comparison of Pruitt and Cawley. On that point, the Board noted it had established a pattern and practice of granting residency waivers during the period immediately after an employee was hired, not just before or at the time of hiring. The Board also attacked the Cawley comparison on other grounds, finding that the marked difference between a classroom teacher and the single CAO serving the entire school system provided a rational basis for its differential treatment of the two employees.

¶ 24    Pruitt filed a complaint for administrative review in the circuit court. The court affirmed the Board's order and upheld Pruitt's termination. This appeal followed.

¶ 25                              Arguments of the Parties

¶ 26    On appeal, both plaintiffs' arguments track the rulings made by their respective hearing officers. Crowley contends that the Board was barred from terminating her because of the staleness provision, and Pruitt contends that her termination was unreasonable because of the Board's failure to fire CAO Cawley and Coyne. Both also contend that nonresidency is not a sufficient cause to justify discharge of a teacher.

¶ 28      The standard for judicial review of administrative decisions, such as the Board's orders of termination here, is well established. We review the administrative agency's decision, not the trial court's determination. *XL Disposal Corp. v. Zehnder*, 304 Ill. App. 3d 202, 207 (1999). The findings and conclusions of the administrative agency on questions of fact are held to be *prima facie* true and correct, and no new or additional evidence on the points at issue may be considered. 735 ILCS 5/3-110 (West 2002). On administrative review, the court does not reweigh evidence nor make an independent determination of the facts. *Provena Covenant Medical Center v. Department of Revenue*, 236 Ill. 2d 368, 386 (2010). "When an administrative agency's factual findings are contested, the court will only ascertain whether such findings of fact are against the manifest weight of the evidence." *Id.* at 386-87. If the only point in dispute is an agency's conclusion on a point of law, the decision is subject to *de novo* review. *Id.* at 387. When the dispute concerns the legal effect of a given set of facts, such as when the facts and law are undisputed, and the issue is whether the facts satisfy the statutory standard, the case presents a "mixed question of law and fact," and we review the agency's decision under a clearly erroneous standard. *Id.*

¶ 29      Our review of an administrative agency's decision to discharge an employee involves a two-step analysis. *Siwek v. Police Board*, 374 Ill. App. 3d 735 (2007). First, we determine if the agency's factual findings are contrary to the manifest weight of the evidence. *Kappel v. Police Board*, 220 Ill. App. 3d 580, 588 (1991). Second, we must determine if the findings of fact provide a sufficient basis for the agency's conclusion that cause for discharge exists. *Id.* at 588-89; *Krocka v. Police Board*, 327 Ill. App. 3d 36, 46 (2001). An administrative agency's finding of "cause" for discharge is entitled to considerable deference and is to be overturned only if it is arbitrary and unreasonable or unrelated to the requirements of the service. *Rodriguez v. Weis*, 408 Ill. App. 3d 663, 668 (2011).

¶ 30      Cause for discharge can be found regardless of whether other employees have been disciplined differently. *Launius v. Board of Fire & Police Commissioners*, 151 Ill. 2d 419, 442 (1992). The mere fact that different individuals have been disciplined differently is not a basis for concluding that an agency's disciplinary decision is unreasonable. *Siwek*, 374 Ill. App. 3d at 738. Additionally, exceptions may be validly made " 'where a rule is waived to afford more lenient treatment of a person.' " *Mattoon Community School Unit School District No. 2 v. Illinois Educational Labor Relations Board*, 193 Ill. App. 3d 875, 881 (1990) (quoting Stephen Breyer & Richard Stewart, Administrative Law and Regulatory Policy 527-28 (2d ed. 1985)). Unequal treatment only becomes suspect if "the factual circumstances surrounding the discharge of other employees are sufficiently similar to the facts surrounding the discharge at issue to enable the reviewing court to perform a meaningful and informed comparison." *Rodriguez*, 408 Ill. App. 3d at 668-69 (citing *Launius*, 151 Ill. 2d at 441-43).

¶ 31      A tenured Chicago public school teacher cannot be fired except "for cause." 105 ILCS 5/34-84 (West 2010). Tenured teachers must be given a written warning before dismissal proceedings are instituted. 105 ILCS 5/34-85 (West 2010). Failure to comply with the written warning can justify dismissal. *Prato v. Vallas*, 331 Ill. App. 3d 852, 862-63 (2002). The termination of a teacher is not clearly erroneous if it is based on the teacher's failure to comply with the conditions, laws, policies and/or other requirements imposed for the protection of the school district. *Ahmad v. Board of Education of the City of Chicago*, 365 Ill. App. 3d 155 (2006).

¶ 32	The basic facts before us–that the plaintiffs violated the residency policy, and that the policy was not enforced against two other employees for particular reasons–are not in dispute. We must determine whether those facts justify discharge when reviewed under the applicable standards. This presents mixed issues of law and fact under which we must affirm the Board's decisions unless they were clearly erroneous. *Jones v. Board of Educationof the City of Chicago*, 2013 IL App (1st) 122437, ¶ 26.

¶ 33	We find that the plaintiffs' comparison of themselves to Cawley is particularly inapt. Cawley, as the CAO, was an at-will high-level employee not covered by a union contract. Like all top-level public administrators, he was subject to dismissal at any time, particularly when administrations changed and brought in their own leadership team. Pruitt and Crowley were tenured classroom teachers whose employment was governed by contract. It is elementary that the Board can apply different employment standards to the CAO of one of the nation's largest school systems than its rank-and-file teachers. Similarly, it can establish different requirements for schoolteachers as opposed to social workers, and testimony explained why it had not yet completed termination proceedings against the social workers like Coyne. Additionally, we agree with the Board that its policies did not strictly limit the granting of waivers to the exact time of hire. Because the policy specifically stated that employees could *apply for* a waiver at the time of hire, it can be presumed that the waiver might not be awarded until some time after employee was already working–particularly during the window of time new nonresident employees were granted to move into Chicago as the result of an application made at the time they were hired.

¶ 34	We also find that the Board's decision that the termination proceedings were not stale was not clearly erroneous. First, we note that, under the Board policy, the passage of time only gave rise to a *presumption* that the Board condoned the conduct. That presumption was clearly overcome by the evidence. Both employees engaged in a high-risk strategy of living outside Chicago and waiting for disciplinary proceedings to eventually commence while fully aware that their conduct violated Board policy. Most importantly, unlike the "one time" misconduct the staleness policy was obviously drafted to address, their nonresidency constituted a continuing violation of Board rules. In any event, the Board's second warning resolutions in 2010 started the clock ticking again so as to obviate any possible reliance the employees might have had regarding the Board's past nonenforcement of the residency policy. Employers are not estopped from moving from lax enforcement of employee conduct rules to more strict enforcement if the change is made clear to the employees and announced in advance. *Western Dairymen Cooperative, Inc. v. Board of Review of the Industrial Comm'n*, 684 P.2d 647, 649 (Utah 1984).

¶ 35	In their briefs before this court, plaintiffs contend for the first time that living outside Chicago was not sufficient cause for discharge. We find that plaintiffs forfeited this argument by failing to raise it below. Any issue that is not raised before the administrative agency, even constitutional issues that the agency lacks the authority to decide, will be forfeited by the party failing to raise the issue. *Board of Education, Joliet Township High School District No. 204 v. Board of Education, Lincoln Way Community High School District No. 210*, 231 Ill. 2d 184, 205 (2008). Even so, an employee's violation of a residency requirement is valid cause for discharge. *Anderson v. Department of Public Property*, 140 Ill. App. 3d 772, 778 (1986). Additionally, residency requirements have been long upheld against constitutional attacks, on the bases that they promote community identity and stability, reduce local

unemployment, and ensure that taxes paid by employees inure to the benefit of the employing governmental body. See, *e.g.*, *McCarthy v. Philadelphia Civil Service Comm'n*, 424 U.S. 645 (1976) (*per curiam*) (upholding residency requirement against a challenge based on the right to interstate travel); *Detroit Police Officers Ass'n v. City of Detroit*, 405 U.S. 950 (1972) (dismissing challenge to residency rule for want of a substantial federal question); *Fagiano v. Police Board*, 98 Ill. 2d 277 (1983) (upholding residency requirement against vagueness challenge); *Fedanzo v. City of Chicago*, 333 Ill. App. 3d 339 (2002) (upholding residency requirement against privileges and immunities challenge).

¶ 36                                                    CONCLUSION

¶ 37      For these reasons, we affirm the orders of the circuit court, which had affirmed the final decisions of the Board of Education of the City of Chicago terminating plaintiffs' employment.

¶ 38          No. 1-13-0727, Affirmed.
¶ 39          No. 1-13-1121, Affirmed.